# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| Debra Leigh Jacobs, | 2:15-cv-00533-JAD |
| Appellant | 2:15-cv-00911-JAD |
| | 2:15-cv-00912-JAD |
| v. | Bankruptcy No. BK-04-19619-GS |
| Brain Power America, Inc., | **Order Affirming Bankruptcy Court Decision** |
| Appellee | |

In 2002, Brain Power America, Inc. obtained a judgment against Debra Jacobs and a lien on her home. A couple years later, Jacobs filed for bankruptcy—but for some reason she did not include Brain Power's judgment or the lien in her filing, so it was not part of the bankruptcy court's discharge order. Brain Power's judgment and lien has thus remained on Jacobs's home ever since, and over the last decade, Brain Power occasionally renewed it to account for accruing interest.

In 2014, Jacobs finally moved to reopen her bankruptcy case to address Brain Power's lien. Instead of simply seeking to avoid the lien under the applicable bankruptcy code provision, Jacobs moved to hold Brain Power in contempt. She reasoned that Brain Power's renewal of its judgment and lien amounted to an enforcement action against her, which violated the automatic bankruptcy stay and the bankruptcy court's discharge order. Brain Power then moved for sanctions, arguing that Jacobs's contempt motion was frivolous. Cooler heads prevailed: the bankruptcy court found that Brain Power was not in contempt but that the lien should nevertheless be avoided. The court also denied Brain Power's motion for sanctions.

The parties appeal each of these determinations, but I affirm the bankruptcy court across the board. First, the bankruptcy court did not abuse its discretion in finding that Brain Power was not in contempt. Brain Power's renewal of its preexisting judgment and lien did not amount to an enforcement action that violated the stay or discharge order. And even if it technically did, Jacobs did not show that Brain Power knew that the stay or discharge order applied to its judgment, which is

required for contempt. Nor did the bankruptcy court abuse its discretion in declining to impose sanctions on Jacobs for filing her contempt motion; at least some authority supported her position, and there is no evidence that Jacobs filed the motion in bad faith. Finally, the bankruptcy court was within its discretion to hold that Brain Power's lien was avoidable given that Jacobs's home was clearly exempt under Nevada's homestead law.

## Background

Brain Power obtained a judgment against Jacobs in 2002 and recorded it, perfecting a lien on her home.[1] The next year, Jacobs filed a declaration selecting this same house as her homestead-exempted home under Nevada law.[2] The year after that, Jacobs filed for Chapter 13 bankruptcy. Jacobs's bankruptcy case would stay open for four more years, until December 2008 when she received her discharge order.[3]

During all of this time, Brain Power's judgment and lien remained on Jacobs's home, and Brain Power renewed it twice: once in 2008 while Jacobs's bankruptcy case was ongoing, and again in 2014 long after the discharge order was entered.[4] Finally, in 2014 Jacobs moved to reopen her bankruptcy and hold Brain Power in contempt for renewing its judgment.[5] Brain Power moved for sanctions under Bankruptcy Rule 9011, arguing that Jacobs's motion was frivolous.

The bankruptcy court denied Jacobs's motion to hold Brain Power in contempt, reasoning that Brain Power did not violate the stay or discharge order by merely renewing a judgment.[6] The court also denied Brain Power's motion for sanctions because adequate law supported Jacobs's

---

[1] ECF No. 19-1 at 16–17.

[2] ECF No. 19-6 at 3.

[3] ECF No. 19-1 at 76.

[4] *Id.* at 16–17.

[5] ECF No. 19-2.

[6] ECF No. 27 at 48.

motion.[7]  But the court nevertheless reopened Jacobs's bankruptcy so she could move to avoid her lien.  She did so, and the court granted her motion because Jacobs's home was clearly homesteaded and thus protected from Brain Power's lien.[8]

## Discussion

### A.     Standard of Review

I review the bankruptcy court's decision for abuse of discretion and apply a two-part test.[9]  I consider de novo whether the court applied the correct legal standard.[10]  But I review the bankruptcy court's findings of fact for clear error.[11]  A fact finding is only clearly erroneous "if it was without adequate evidentiary support or was induced by an erroneous view of the law."[12]  I "may not simply substitute [my] view" for that of the bankruptcy court.[13]  Finally, I may affirm on any basis supported by the record.[14]

### B.     The bankruptcy court did not abuse its discretion in holding that Brain Power was not in contempt.

Jacobs argues that Brain Power violated the bankruptcy court's automatic stay when it renewed its judgment and lien against her home.[15]  Jacobs concludes that the bankruptcy court thus

---

[7] The bankruptcy judge was, however, understandably annoyed that Jacobs filed a motion to hold Brain Power in contempt instead of simply moving to avoid the lien as the bankruptcy code allows.  *Id.* (stating that Jacobs was "hunting for attorneys' fees here").

[8] *Id.* at 65–70.

[9] *Leavitt v. Soto,* 171 F.3d 1219, 1223 (9th Cir. 1999).

[10] *Id.*

[11] *Id.*

[12] *Wall St. Plaza, LLC v. JSJF Corp.*, 344 B.R. 94, 99 (B.A.P. 9th Cir. 2006).

[13] *Barrera v. W. United Ins. Co.*, 567 F. App'x 491, 493 (9th Cir. 2014) (*citing U.S. v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009)).

[14] *Heilman v. Heilman*, 430 B.R. 213, 216 (B.A.P. 9th Cir. 2010).

[15] Jacobs also argues that Brain Power's renewal violated the discharge order under 11 U.S.C. § 524(a), but she waived this argument by not providing any authority or analysis to support her

abused its discretion by not holding Brain Power in contempt.[16]

To obtain a contempt order, Jacobs had to show not only that Brain Power technically violated the stay, she also has to show by clear and convincing evidence that Brain Power "knew the [stay] was applicable and intended the actions" that violated it.[17]

First, the bankruptcy court was right to hold that Brain Power's renewal did not even violate the stay. The automatic stay is a creature of the bankruptcy code. It prevents a creditor from "creat[ing], perfect[ing], or enforc[ing]" a lien, and it prohibits a creditor from "enforcement" efforts against the debtor.[18] What is notably missing is a prohibition on renewing an *existing* judgment.[19] At heart, the automatic stay is about maintaining the status quo, and renewing an existing judgment does just that. With the exception of an outlier or two, courts generally hold that renewing a

---

position. Even if she had not, Brain Power's renewal would not violate the discharge order for the same reason that it doesn't violate the automatic stay. Section 524(a) prohibits "commenc[ing]" or "continuing" actions to "collect" from a debtor—it says nothing about renewing an existing judgment. Jacobs also argued that Brain Power violated the stay by "enlarging" its lien. But Brain Power did not enlarge anything; it simply updated the amount of interest as called for in the original judgment.

[16] The parties devote significant portions of their briefs arguing about whether Brain Power's judgment and lien was voided by Jacobs filing a declaration that her house was a homestead under Nevada law. But neither has explained how the validity of Brain Power's lien matters here. Jacobs has not shown that renewing a judgment and lien that was void under Nevada law should be treated differently than renewing a valid judgment. The relevant question remains in either case: does attempting to renew a judgment violate a stay or discharge order? And in any event, the bankruptcy court did not abuse its discretion when it found that Jacobs's homestead failed to automatically wipe out the lien. The only authority Jacobs cited for her proposition addressed the situation where a homestead is filed first and a lien later—not the situation here, where the lien was recorded and perfected before the debtor ever declared the homestead. *See In re Contrevo*, 153 P.3d 652, 654 (Nev. 2007). If Jacobs believed that the judgment and lien should have been voided under Nevada state law because she declared her house a homestead, then she was free to attack the lien directly. The bankruptcy court made a similar point in the hearing on Jacobs's motion, saying that arguments about the "effectiveness" of the lien are a "separate matter." ECF No. 27 at 50.

[17] *In re Taggart*, 548 B.R. 275, 286 (B.A.P. 9th Cir. 2016) (quotation omitted).

[18] 11 U.S.C. 362(a)(2), (4).

[19] *In re Morton*, 866 F.2d 561, 564 (2d Cir.1989) ("Significantly, the [automatic stay] does not explicitly prohibit acts to extend, continue, or renew otherwise valid statutory liens.").

1 judgment does not violate a stay, and I join them.[20]

2 Second, even if Brain Power technically violated the stay or order, Jacobs did not show that Brain Power acted willfully. A party should be held in contempt only when it actually knows that a court order applies to it and violates that order regardless.[21] Jacobs did not prove, by clear and convincing evidence, that Brain Power even knew that the stay or discharge order existed, much less that it applied to its judgment. Jacobs offers a tenuous theory that Brain Power was imputed with knowledge of the bankruptcy because its counsel knew of it, but that is not enough.[22] And even if Brain Power had imputed knowledge of Jacobs's bankruptcy, that does not mean that Brain Power knew the stay or discharge order applied to its judgment renewal (particularly given that Jacobs

---

[20] *Employee Painters' Trust v. Ethan Enterprises, Inc.*, 2015 WL 4743825, at *5 (W.D. Wash. Aug. 11, 2015) (collecting cases); *see also Wussler v. Silva (In re Silva)*, 215 B.R. 73 (Bankr. D. Idaho 1997); *In re Morton*, 866 F.2d at 564; *In re Boggan*, 1999 WL 33490218, at *3 (Bankr. D. Idaho Nov. 30, 1999). I found only a single case holding otherwise: *In re Lobherr*, 282 B.R. 912, 915 (Bankr. C.D. Cal. 2002) (holding that California's judgment-renewal scheme operated more as an adversarial proceeding than a simple ministerial act, and thus renewing a California lien violated the automatic stay). Even if I found *Lobherr's* reasoning persuasive, which I don't, *Lobherr* is distinguishable because it addressed California's adversarial renewal process, not Nevada's process that merely requires an affidavit to be filed with the court. *See* Nev. Rev. Stat. § 17.214. Notably, the Ninth Circuit has not yet decided the issue. *See, e.g., In re Spirtos*, 221 F.3d 1079, 1081 (9th Cir. 2000) (declining to decide whether an automatic stay prevents a creditor from renewing a judgment).

[21] *In re Taggart*, 548 B.R. at 286.

[22] Jacobs cites cases for the proposition that a creditor is imputed with its attorney's knowledge about a bankruptcy case. But these cases address whether a creditor has been put on notice for purposes of filing a proof of claim in bankruptcy, not the very different context of proving by clear and convincing evidence that a party had actual knowledge of a bankruptcy order to hold a party in personal contempt. *See, e.g., In re Griggs*, 306 B.R. 660, 666 (Bankr. W.D. Mo. 2004) (addressing whether creditor had notice to file proof of claim). Moreover, in all of the cases Jacobs cites, the creditor's attorney was served with actual notice of the bankruptcy case, which never happened here. *See, e.g., id.* (emphasizing that the attorney was sent multiple notices of the bankruptcy and entered an appearance in the bankruptcy case on behalf of the creditor); *In re Harris*, 447 B.R. 254, 256 (Bankr. W.D. Ark. 2011) (holding that notice to counsel was irrelevant because counsel never received "proper notice of the bankruptcy filing" because the debtor neglected to "include [the creditor] on the debtor's creditor matric").

never made any move to include Brain Power's judgment in her bankruptcy case).[23]

In short, the bankruptcy court had many reasons to decline to hold Brain Power in contempt, so I affirm its decision on this point.

**C.  The bankruptcy court did not abuse its discretion in denying Brain Power's sanctions motion.**

Bankruptcy Rule 9011, the bankruptcy court's version of Federal Rule of Civil Procedure 11, requires that attorneys have an evidentiary and legal basis for any representations they make in a written document filed with the court.[24]  An attorney need only have a good-faith argument for modifying or interpreting existing law to meet this standard, nothing more.[25]  Brain Power contends that Jacobs's attorney violated this rule because he filed the motion to compel even though that caselaw foreclosed his arguments—and despite the fact that Brain Power had repeatedly advised that the motion to compel was a loser.  But the bankruptcy court did not abuse its discretion here.

Brain Power says that the bankruptcy judge "considered it an elementary proposition that the act of renewing a judgment is ministerial and not subject to the automatic stay."[26]  But that isn't what

---

[23] This is also true given that the weight of authority suggested that the stay did not apply to renewing a judgment.  And even if Brain Power was technically in contempt, the bankruptcy court made clear that it found that Brain Power acted in good faith and would not award Jacobs any relief, which was a matter well within its discretion.

[24] *In re Spickelmier*, 469 B.R. 903, 909 (Bankr. D. Nev. 2012).

[25] *Id.*

[26] ECF No. 28 at 18.  Brain Power also makes much out of its argument that Jacobs's counsel should have known that Brain Power's lien was not impacted by Jacobs's homestead because the judgment was recorded before the homestead declaration.  But Brain Power has not cited a single case indicating that a preexisting judgment survives a declaration of homestead under Nevada law.  And the one case that it does provide, *In re Contrevo*, suggests that Nevada courts would void Brain Power's lien regardless of whether it was recorded before the homestead declaration.  153 P.3d at 654.  The Nevada Supreme Court noted in that case that the legislature never intended liens "to attach *or otherwise affect the title to fully exempt homestead property,*" that the homestead laws "remove the property beyond the reach of legal process," that a debtor has the right to "sell his exempt homestead property free from the liens of creditors," and that allowing a lien to exist on a homesteaded property would unfairly "cloud the title to property that they have no legal right to execute against."  *Id.*  This language strongly suggests that a homesteaded property would be free of all liens, regardless of when a lien happened to have been recorded.

1   the judge said. She said that the cases "did not make it easy" and that she spent a "a lot of time" on
2   the motion because the issues were "open to question."[27] No legal authority expressly foreclosed
3   Jacobs's arguments for holding Brain Power in contempt. At least one case held that Brain Power's
4   renewal of its judgment violated the bankruptcy stay, and the Ninth Circuit has not spoken on this
5   issue. I thus cannot say that Jacobs's counsel's arguments were anything but a good-faith argument
6   for modifying or interpreting these authorities. The bankruptcy court therefore did not abuse its
7   discretion by rejecting Brain Power's Rule 9011 motion.

**D. The bankruptcy court did not abuse its discretion in granting Jacobs's motion to avoid Brain Power's lien.**

Finally, Brain Power argues that the bankruptcy court abused its discretion in allowing Jacobs to avoid the lien. Brain Power's primary argument is that Jacobs lost the power to challenge the lien by waiting too long to reopen her bankruptcy case.

"Absent a prejudicial delay, an avoidance action may be brought at any time."[28] The Ninth Circuit has noted a number of factors that bankruptcy courts can consider when deciding whether to reopen a case to avoid a lien, including (among many other things) whether the lien holder regularly communicated with the debtor and whether the lien holder "vigorously" pursued its lien prior to the bankruptcy petition.[29] But the "key factor" is whether the creditor is "sufficiently prejudiced [] that it would be inequitable to allow avoidance of the lien."[30] Delay alone is "not sufficient to show prejudice."[31]

Brain Power's argument revolves around the fact that Jacobs waited a long time before seeking to avoid the lien, but that is not enough. Brain Power has not attempted to enforce the lien, and it points to no action it took in the interim save filing an affidavit twice to renew the judgment

---

[27] ECF No. 23-1 at 5.

[28] *In re Chabot,* 992 F.2d 891, 893 (9th Cir. 1993).

[29] *Id.*

[30] *Id.*

[31] *Id.*

Page 7 of 8

(which it repeatedly reminds me in other parts of its briefing is merely a simple, ministerial act). Brain Power did not show that it was so prejudiced by Jacobs's delay that it would be inequitable to allow Jacobs to avoid the lien.[32] The bankruptcy court therefore did not abuse its discretion on this issue either.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the bankruptcy court's decision is **AFFIRMED**.

Dated this 2nd of March, 2017.

_____
Jennifer A. Dorsey
United States District Judge

---

[32] Brain Power mentions in a single sentence another argument: that Jacobs did not meet her burden to prove that her home equity was small enough to trigger Nevada's homestead law. Brain Power waived this argument by not meaningfully arguing it in its briefing; even if it had not, it has not shown that the bankruptcy court's fact findings about the home's equity were clearly erroneous. The bankruptcy court found that Jacobs had less than $100,000 in equity, far below the $350,000 cap. And Brain Power points to no evidence suggesting that this finding was in error.